ELI WHITNEY VS. AND ADVS. THE STATE.

1. STATE: *Suits against the state. Liability for interest.*

As a general rule the state is not bound to pay interest, and in cases where the contract contemplates the action of the legislature in order to pay the claim, interest cannot be claimed until such application is made to the legislature. Where a claim is presented to the auditor for payment, when there is no appropriation to pay it, and payment is refused by the auditor for that reason, such refusal does not create a liability upon the state to pay interest from the date of such presentation.

2. SAME: SAME: *Statute of limitations.*

The statute of limitations never runs where there is no person in being against whom a suit can be maintained. Without some statute permitting it the state cannot be sued. From 1856 to October 1, 1871, no statute authorized the state to be sued. Where, in a suit against the state, the statute of limitations of three years is relied upon, and three years and more had elapsed since the adoption of the contract and the maturity of the claim, the claim is not barred unless that period had elapsed since the adoption of the Code, October 1, 1871, and before the bringing of the suit.

3. SAME: SAME: *Contract in aid of the rebellion. Constitutional provisions.*

The act of the legislature of this state, approved December 15, 1859, appropriating $150,000 to purchase and repair fire-arms for the state militia, and a contract entered into in June, 1860, for the purchase of such arms, were not acts in aid of the rebellion, and such contract is valid.

ERROR to the Circuit Court of *Hinds* County.

Hon. S. S. CALHOON, Judge.

Eli Whitney brought suit in the circuit court of Hinds county against the state of Mississippi.

The declaration was filed on the 21st day of March, 1874,

demanding judgment for $4,260 and interest on the following bill of particulars, to wit:

" THE STATE OF MISSISSIPPI

| 1860. | | *To Eli Whitney* | | *Dr.* |
|---|---|---|---|---|
| May  17. To | 1 | new model Mississippi rifle and saber bayonet............$ 14 | | |
| | " 2 | army andnavy revolvers....... 12 | | |
| | | | $ 38 | |
| Sept. 18. | " 75 | long-range Minnie muskets and appendages, at $12........$900 | | |
| | " 4 | arms chests, at $3............ 12 | | |
| | | | 912 | |
| Sept. 28. | " 60 | new model Mississippi rifles and appendages, at $10.........$600 | | |
| | " 60 | saber bayonets, at $5......... 300 | | |
| | " 3 | arms chests, at $3............ 9 | | |
| | | | 909 | |
| Oct.  16. | " 60 | Mississippi rifles and appendages, at $12...............$720 | | |
| | " 60 | saber bayonets, at $5....... . 300 | | |
| | " 3 | arms chests, at $3........... 9 | | |
| | | | 1,029 | |
| Dec.  21. | " 80 | Mississippi rifles and appendages, at $12................$960 | | |
| | " 80 | saber bayonets, at $5......... 400 | | |
| | " 4 | arms chests, at $3............ 12 | | |
| | | | 1,372 | |
| | | | $4,260 | |

Interest from average of acc. to date of settlement."

Defendant (the state) pleaded:

1. The statute of limitations ; and,

2. That the arms were purchased in aid of the rebellion.

Issue was joined, a jury was waived, and the questions of both law and fact were submitted to the court, and judgment.

rendered in favor of the plaintiff for his debt, without interest, and both parties prosecuted writs of error.

Plaintiff assigns for error " that he was refused interest on his debt."

Defendant assigns for error that the court rendered a judgment for plaintiff for the debt.

*Nugent & McWillie*, for plaintiff in error :

1. For Whitney we insist that he was entitled to interest upon the claim, after the close of the war, upon the adjudications in our own state. *More than this we do not demand.* The claim was often presented for payment, and refused on the ground that the debt was contracted in aid of the rebellion. The state can claim interest and must pay interest. Swann v. Turner, 23 Miss., 565 ; Thorndike v. United States, 8 Mason.

The contract was made by the governor and adjutant general, under the act of December 15, 1859 (Acts 1859, p. 128). If this claim for interest is not well founded, certainly we are entitled to interest from October, 1871, when the state *became suable.*

2. As to the 1st defense, we think the replication to the plea is good. The state was not *suable* until October 1, 1871, when the Code went into effect, and the statute could only run from that date. At common law no suit could be maintained against the state. Bl. Com. (Cooley's ed.), 255 ; Broom's Const. Law, 235 ; United States v. McLeman, 4 How., 286 ; Hill v. United States, 9 How., 386. After the abolition of the old superior court of chancery the state could not be sued, " no new regulation having been made," until the adoption of our present Code. Swann v. Breck, 40 Miss., 299. But the statute of limitations cannot begin to run until there is a person or party to be sued. 2 Mart. (La.), 422 ; 4 Md. Ch., 368 ; 40 Miss., 268 ; Angell on Lim. (5th ed.), 49, ch. 7 ; 8 Watts (Pa.), 44 ; Abbot v. McElroy, 10 S. & M., 100 ; Dowell v. Webber, 2 ib., 452 ; 11 ib., 9 ; 27 Miss., 473 ; 24 ib., 249.

The 2d defense is untenable. The war between the states did not commence until April 19, 1861. 12 Wall., 700 ; 9 ib., 74 ; 42 Ala., 548 ; 21 La. An., 18. The ordinance of secession was passed in this state January 9, 1861. The contract was entered into months before either, and without reference to them. The last item of the account was the subject-matter of a correspondence with Jefferson Davis, then a senator in congress from this state. At that time no one supposed there would be anything like a war. Plaintiff was then furnishing arms to other states. The plea is not established by proof of any kind. The constitutional provision was only intended to prevent the state from assuming and paying a debt or obligation for which she was not, by well known rules of law, bound in any manner. The debt or obligation must have been contracted in aid of the rebellion ; but before there could be *such a debt* there must have been a rebellion in law and fact. This is not pretended, and the court is asked to decline judgment in this case because the articles sold were guns, and, the presumption is, bought in preparation for a possible contingency, made manifest by the subsequent act of secession, and the subsequent war could not affect the contract under which they were purchased.

*G. E. Harris* and *P. P. Bailey*, Attorney General, for the State :

1. We rely upon the several statutes of limitation. See Acts of 1865, pp. 145, 146 ; Acts of 1866, 1867, pp. 5, 6, 29 ; Code of 1871, § 2151. It is insisted that the statute of limitations could not run until the state could be sued, October 1, 1871. We cannot believe that a claimant against the state had no right of action, and that therefore his claim was never barred. It was the duty of the auditor to issue warrants to just claimants, and for failure he was liable to mandamus. Code, 1857, p. 108, art. 32. The state never intended to place herself in a worse position than her citizens.

2. The plaintiff, if entitled to recover at all, cannot recover interest. He cites and relies on Swann *v.* Turner, 23 Miss.,

565.   But see the later case of The State *v.* Mayes, 28 ib., 706.

3.  The payment of the demand is prohibited by the constitution of the United States (amendments), art. 14, § 4, and the constitution of Mississippi, 1869, art. 12, § 21.   The plea sets up the fact that the consideration, if any, was guns and other munitions of war, and that the contract was void.  We do not contend the state was in rebellion at the time of the sale, but that the arms were purchased in the course of active preparation for war, and were therefore in aid of the rebellion. The legislature, on December 15, 1859, appropriated $150,000 to buy arms.   The contract with plaintiff was in June, 1860, The arms were being delivered, except a sample, from September 18 to December 21, 1860, within seventeen days of the act of secession, and long after the legislature had called a convention and recommended secession as the remedy.   Numerous urgent letters were written to plaintiff by the adjutant general to hurry up the guns.   Meanwhile $2,425 was paid for pistols. So great was the emergency, even then, that the guns were not shipped to the capital for distribution, but were distributed from the factory in Connecticut to different points in this state.

CHALMERS, J., delivered the opinion of the court.

Eli Whitney brought suit against the state of Mississippi, and recovered judgment in the circuit court of Hinds county, for the sum of $4.260, on an open account for fire-arms, sold and delivered to the state in 1860.   His judgment was for the principal sum of his account, without interest.   He appeals, and assigns for error that he was refused interest on the debt. The state also appeals upon the ground that, the fire-arms having been furnished for purposes of rebellion against the United States government, payment therefor is prohibited by the constitution of the state and of the United States, and upon the further ground that plaintiff's account, if ever valid, was barred before suit brought by the statute of limitations of three years. We will first consider plaintiff's claim for interest.   Is the state liable for interest?   This question is answered broadly in the

affirmative in Swann, auditor, *v.* Turner, 23 Miss., 565. Upon the authority of Judge Story, in case of Thorndike *v.* The United States, 8 Mason, the language used would seem to go to the extent of holding that interest would run against the state, as against an individual, from the date of the contract; but in The State *v.* Mayes, 28 Miss., 706, this doctrine is modified, and it is said that, '' as a general rule, the state is not bound to pay interest, and in cases of this kind, where the contract contemplates the action of the legislature in order to pay the claim, it is to be presumed to have been made with reference to such action, and not to be a complete debt until the demand be made. Of course interest could not be claimed until such demand was made to the legislature, because no default would have occured until such demand.''

The doctrine here announced seems to be that contracts against the state will not bear interest from date or maturity, but they will bear interest from the time when demand of payment is made upon, and refused by, some officer authorized to pay them.

In the case at bar it was admitted by the attorney general, on behalf of the state, '' that the account sued on had repeatedly been presented for payment to the auditor of public accounts, and payment demanded and refused, prior to the institution of the suit.'' It was impossible to award any interest, on such an admission as this (save perhaps from the institution of the suit), because of the failure to specify the dates of these presentations to the auditor.

Plaintiff's attorney testified that he presented the claim to the auditor, and that payment was refused, about two weeks before the suit was brought.

Was plaintiff entitled to interest from that date? This would seem to depend on the question whether the auditor could have paid it, or was under a legal obligation to do so, without action by the legislature.

The arms were purchased under the provisions of an act

approved December 15, 1859 (Acts of 1859, p. 128), whereby the sum of $150,000 was appropriated, to be expended by the governor in the purchase of arms for the militia of the state, and in the repairing of those on hand. It is provided that "the auditor shall issue his warrants on the treasurer for such parts thereof as the governor may, from time to time, by his written order direct."

It would seem, therefore, that in order to show a legal obligation on the auditor to issue warrants in favor of plaintiff, at the date of the commencement of this suit, in 1874, it should have been established that the appropriation made in 1859 had not been exhausted, and that plaintiff held the order of the then governor directing such issuance. Neither of these circumstances were shown. Moreover, by several resolutions of the legislature of 1865, the auditor was prohibited from issuing warrants in favor of past claims against the state, without special authority from the legislature, the object being to prevent the issuance of warrants on a vast body of demands claimed to have accrued before and during the war. Acts of 1865, pp. 249, 252, 248.

It is thus made manifest that the auditor had no authority to have made the payment demanded before the bringing of the suit, and, consequently, within the principle laid down in The State v. Mayes, *supra*, the state is not liable for interest. This disposes of the assignment of error by the plaintiff.

We held in Board of Supervisors of Warren Co. v. Klein, 51 Miss., 808, that auditor's warrants do not bear interest; this is upon the ground that such instruments are in the nature of bank checks, and will be paid upon presentment, if there be funds in the treasury. In the one case, the state has made a settlement; in the other, she has refused to do so.

The state, by her legal representative, the attorney general, relies upon the statute of limitations, and illegality of the contract. The statute of limitations constitutes no defense, because, although more than three years intervened between

the making of the contract and the bringing of the suit, that period had not elapsed since the adoption of the new Code, October 1, 1871, by virtue alone of which the state was made amenable to suit. Without some statutory enactment permitting it, the state cannot be sued. From the abolition of the old superior court of chancery, by constitutional amendment in 1856, to the adoption of the code of 1871, we had no such statutory provision.

The statute of limitations never runs where there is no person in being against whom a suit can be maintained. Angell on Lim., 49 ; Abbott v. McElroy, 10 S. & M., 100 ; Dowell v. Webber, 2 S. & M., 452.

There is nothing whatever in the position that the payment of the debt sued on is prohibited by those clauses of the state and federal constitutions which forbid the assumption or payment of debts contracted in aid of the rebellion. The act authorizing the purchase of the arms in question was passed on 15th of December, 1859, and the contract entered into in June, 1860. Similar purchases, for the purpose of arming their militia, were at that day, and are at present, quite common to all the states, and there is no more justification or pretense for saying that the passage of the act of December, 1859, was part of a deep laid conspiracy to subvert the Union, than there would be for declaring hereafter, in the event of civil disturbances growing out of the presidential election just passed, that the state of Mississippi was fomenting and preparing for such an emergency, by the acts of her legislature, adopted two years ago, authorizing the purchase of Gatlin guns and other fire-arms.

The judgment is affirmed.